May it please the court, my name is Leticia Marquez and I'm with the Federal Public Defender's Office, District of Arizona, and I represent Mr. Danny Lee Jones. I'd like to reserve five minutes for rebuttal. The ADPA outlines the circumstances under which a federal court may grant relief to a petitioner whose claims have been adjudicated on the merits in state court. Specifically, a court may grant relief if the adjudication of the claim resulted in a decision that was contrary to or an unreasonable application of clearly established Supreme Court precedent or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Most of us could recite that from heart. So why don't you proceed to your best arguments. Okay. The recent Supreme Court case, Cullum v. Pinholster, held the Federal courts are limited to the state court record in making the determination that I just articulated. In addition, the recent Supreme Court cases of Johnson v. Williams and Harrington v. Richter clarified the meaning of the phrase adjudication on the merits. The primary issues before this court are the three ineffective assistance of counsel claims, failure to secure a mental health expert, failure to timely move for a neuropsychologist for neuropsychological or neurological testing, and failure to present additional mitigation witnesses or evidence. As set forth in our briefs, this line of cases do not apply and or alter this Court's original disposition of Mr. Jones' ineffective assistance of counsel claim, first because the state court fact-finding proceeding was defective and precluded Mr. Jones from factual development. The state court findings can't be considered an adjudication on the merits, and this Court is not constrained by 2254d deference. And the alternative, this Court may consider the prejudice prong de novo since the state court did not decide that prong and, therefore, was not adjudicated on the merits. What's your best case to support the argument that if the panel finds the state court factual defective, that we can consider evidence that was adduced in the hearing in district court? Well, in the Supreme Court in Panetti held that the fact-finding procedures upon which the state court relied were not adequate for reaching reasonable correct results or at minimum resulted in a process that appeared to be seriously inadequate for the ascertainment of the truth. In addition, this Court in Madoff v. Taylor held that a defective process is also an unreasonable determination of the facts. More recently, the Seventh Circuit in an opinion, Winton v. Kelly, held not only that a defective process made for an unreasonable determination of the facts but further found that when a State forecloses fact development, it passes up the opportunity that exhaustion provides. If the record proves to be incomplete, deference is inappropriate, and because an incomplete record is not an adjudicate – because an incomplete record is not an adjudication on the record. So any time a Federal court thinks there are inadequacies or holes in the State court record, deference, HEDPA deference, goes out the window? Well, it's not just any time the Federal court finds holes or some deficits. It has to rise to the deficits in the post-conviction procedure has to rise to the entire process where the Petitioner is unable to develop any facts to support the claims that he's presenting to the State court. What are the most important facts that your client was precluded from presenting in the State court proceedings? Well, the entire prejudice analysis of his ineffective assistance of counsel claims was completely precluded by the State court. The – Give us an example of what you think was excluded when your client attempted to produce it in the State court. First and foremost, he was denied funds for neurological or neuropsychological testing. So he was given a hearing, an evidentiary hearing in State court on an ineffective assistance of counsel claim for failing to conduct neuropsychological testing, and was not given the funds and not given the experts to prove what should have been or to prove a prejudice in that claim. State court had a State-appointed psychiatric experts report before it, correct? That was in first sentencing. Yes, Your Honor. And – Could the State court have reasonably relied upon that? No, because that – first, that doctor was a psychiatrist, and they do not generally do psychiatric testing. Second, the report that was conducted in the sentencing court was, as this panel held earlier, was – and I'm paraphrasing – was a tentative report. The doctor did not diagnose Mr. Jones with anything. He basically highlighted some possible and potential diagnoses. And he was actually the one that said it would be helpful to prove up brain damage if somebody got neurological testing or neuropsychological testing. So, no, the report that was done in State court for sentencing was insufficient. Okay. What else? In addition, he was denied other funds, including a mitigation specialist to assist the post-conviction counsel in presenting the additional mitigation, which would go to our 20T claim. In fact, when he was arguing this in the post-conviction court, the post-conviction or the State court judge said that he didn't understand why he wanted a mitigation specialist. He said it didn't matter whether an investigator had any experience in a death penalty case, that he should be able to use any run-of-the-mill investigator. And actually, the only choice he gave post-conviction counsel was for him to use the same investigator that was used at trial that did some work following up the alibi. And counsel talked to that investigator when he was ordered to do so. That investigator said he had a conflict because they were now investigating an ineffective assistance of counsel claim on what was done and wasn't done. And he articulated this to the judge, and the judge forced him to use that particular investigator for the post-conviction proceedings. So that was another deficit or defect in the post-conviction proceedings. The judge would also make several rulings based on his own recollection without – in order to preclude further evidentiary development. The judge to Esponte ordered post-conviction judge – or the post-conviction lawyer to not talk to jurors. And this wasn't based on any motion on the State – from the State. The post-conviction record is filled with places where the post-conviction lawyer keeps saying, you're putting me in a hard place. I'm not going to be able to prove prejudice. And the – I guess the most persuasive or a big indication of how hampered he was in the post-conviction proceeding is the district court – the district court grant of the evidentiary hearing. In that – in that order, the district court articulated the denial of Mr. Jones's request for a neuropsychological evaluation during his post-conviction proceedings effectively prevented him from being able to establish prejudice and may have impeded the development of facts to show that Novak's investigation was insufficient. One of the – one of the puzzling things, I think, about how pinholster plays out in this context is the evidence of – from the family because, of course, that was available during the State court proceedings. So if we exclude that evidence under pinholster, where does that leave us? If we include the evidence from the family? Yes. In which claim? Well, we're talking about the neuropsychological testing. It relied in large part on subsequent interviews with family members and others about abusive environments, various things that happened during pregnancy, a whole host of different factual predicates. Do you think under pinholster that that material is available in a Federal evidentiary proceeding for consideration, even though it could have been produced in the State proceeding? Well, I think under pinholster doesn't – In other words, I guess my question is this. The question – we were looking at whether the fact-finding was flawed in one sense and we're confined to the record that we have in the State. So assuming that the fact-finding is flawed because the judge didn't consider the neuropsychological – the testing, how does that affect the Federal claim when a great deal of that material is based on the family testimony and other testimony that, in fact, was available in the State court? Well, first, I – a lot of that – some of that testimony was obtained through the family, but a lot of that other testimony was obtained through records. And so I'm not – I won't agree entirely that that's where all the information comes from. Well, all right. Let's say that we take – we leave out of the expert's report that was presented to the family background. Where does that leave your claim? That still leaves a big claim of – it still leaves a lot of facts to support prejudice. Mr. Jones still has a post-traumatic stress disorder, and that is something that he – that he has with him, and that's able to be diagnosed without the family members. Also, Mr. Jones suffers from ADHD. That is also cognitive. Mr. Jones has several head injuries, and those were able to be corroborated through military records and other such things. So there are – there are records that are not just limited or were not just sourced information that wasn't just sourced through the family. To what extent was the – your client prevented from introducing evidence other than – setting aside, now, the psychological testing, in what other respect was he prevented from introducing any of the evidence that was introduced in Federal court, either by the court failing to hold a hearing or by excluding the evidence? Well, other than the psychological – than the neuropsychological testing, he also was precluded – he was denied funds for the mitigation expert, and that would have – the mitigation expert would have developed the social history, and that expert would have been able to find many of the things that perhaps would have been sourced by the family through other means. He was also denied discovery, the appointment of a legal expert, and he was also denied an independent investigator, fact investigator. The judge also didn't hold an evidentiary hearing on one of the ineffective assistance that counsel claims without – without any – that wasn't developed through an evidentiary hearing. Is that the one where he said, I don't need a hearing because I remember what the testimony was? Right. Right. And was there a difference between what he remembered and what the transcript shows? There was a huge difference, because what he said is, I don't need a hearing. Dr. Potts was a defense expert. And as we have set forth in the evidentiary hearing in Federal court and in our pleadings, Dr. – in Dr. Potts' admission, and I don't know how many times he could say it, but he was not a defense expert. He did not do the defense work. He – he did not diagnose Mr. Jones with anything. And so that – that was not what happened in – with that particular claim. On that claim, there was no hearing? There was no hearing. And what would you have developed if there had been a hearing? Well, what we did develop, which was a comprehensive and complicated diagnosis set out in a 31-page report by Dr. Pablo Stewart, where he diagnosed Mr. Jones with four mental health and physical illnesses, all that are in compromised cognitive function, and including post-traumatic stress disorder, ADHD, and mood disorder, a serious mental illness, mood disorder that is on the continuum of bipolar disorder. In fact, Mr. Jones has been on lithium almost his entire life. So had we gotten a defense expert, that's what we would have been able to present. In addition to – The trial court or the habeas court, did you ask them for permission to introduce any such evidence? We did. We had the – an evidentiary hearing in Federal court on these issues. And the State court, PCR court. Yes. The request was – Did you ask the judge there for permission to introduce any such testimony? The post-conviction – post-conviction counsel requested – filed motions and requested an evidentiary hearing in that specific claim in post-conviction – in State post-conviction and was denied, yes. In addition to – to moving on from the defective process claim, unless this court has any more questions on that, I would refer to the court to our briefing on that. I'd like to re-urge and – and really clear up the fact that this court still has the ability, even after Richter, to – to decide the prejudice prong de novo. The Respondents have argued in their – in their petition that Richter overrules Wiggins and – and all the line of cases that apply de novo review to an unaddressed Strickland prong, the – those cases being Porter, Rompillo, Wiggins, Cohn v. Bell. And that argument has been made and rejected by the Fifth, Seventh, and Eleventh Circuit and the Sixth Circuit en banc. And those cases are cited on page 3 of our July 17th brief. In fact, in – in Sussman v. Jenkins, a Seventh Circuit case, the – the Seventh Circuit rejected the argument that the Supreme Court would silently overrule Wiggins, a precedent so important to the daily work of the Federal court. Finally, I'd like to – if this Court finds that it is constricted to the – to the State court record in terms of the – of the deficient performance prong, the State court record stands alone. Mr. Novak's admissions as to the fact that he didn't even think of – of requesting neurological testing when he had tantalizing indicators of head injuries, the fact that he – that he relied on the court-appointed neutral expert and later tried to claim that he was a defense expert even though he had no idea of what the report was going to say until two days before the hearing or before the sentencing is – is evidence of deficient performance. Also, the fact that he was untrained in capital cases by his own admission only three and a half weeks after sentencing that he even started and flew out and spoke with the parents regarding the case. And the fact that he put the mitigation aspect of the case in the hands of a six-month lawyer who turned out to be in the office a mere two months and then all the mitigation investigation was dropped until after sentencing. And even then, it wasn't until six and a half weeks after sentencing that he even started and flew out and spoke with the parents regarding mitigation. Mr. Novak's notes, and I point the court to ER 1118, is the sole – are the notes that he took when he sat down and finally spoke with the parents. It's a one-page, scant writings that had, as this court has held, tantalizing indicators of certain mitigation that should have been followed up on. And I refer the court to its original opinion. And if there aren't any other questions, I'll save the rest of my time for rebuttal. Thank you. May it please the court. My name is Jeff Sick, and I represent Director Ryan in this case. Nearly 30 years ago, Strickland commanded lower federal courts to not overlook the constitutionally protected independence of counsel and the wide latitude that counsel must have in making tactical decisions. Strickland, the Supreme Court, said that specific guidelines are not appropriate in analyzing ineffective assistance of counsel claims. In addition, it informed lower courts to affirmatively entertain the range of possible reasons Jones counsel may have had for proceeding as he did here. In looking at this case and the testimony that Mr. Novak gave in the state post-conviction hearing, it was clear that this case was extremely difficult to defend. And the reason it was difficult to defend was because of the facts of the case and the facts that Mr. Novak had to contend with. Those facts dealt with not only an attack in a garage on Randy Weaver, not once but twice, but an attack on his grandmother in the home, and then the 7-year-old daughter of Randy Weaver observing that and hiding under her parents' bed, and Jones grabbing her and dragging her out from the bed and beating her with a bat and suffocating her. Not only that, but when a witness came to the home, Jones used a ruse to get rid of that witness. Once the witness was gone, Jones then gathered or stole the gun clip. So one of the problems with all of these cases is that the more horrendous you paint the picture of what happened, the more likely it is that there's something wrong with the individual who committed these acts, that he has some kind of mental problems. So that's what we really need to consider, not whether he hit the grandmother or the 7-year-old or what. I mean, I think we all know that it was not a very nice series of acts he committed. But why did he commit the acts and what are his problems? Well, I would agree with you in some cases, Judge Reinhart, that that would paint a picture of someone who is clearly mentally ill. But in this case, the trial court found in the special verdict that it rendered in both cases that Jones wasn't particularly under any type of mental illness and didn't appear to have any cognitive dysfunction, because he was thinking clearly in setting up the ruse to get rid of the witness and then hiding himself from prosecution by going to his residence and gathering all of his belongings, including the stolen items, and then hiring someone to take him, a taxi to take him to Las Vegas. So in that sense, Judge Reinhart, the trial court looked at this and said there really wasn't any evidence of cognitive dysfunction or organic brain damage. And that's one of the reasons you have to look at when the defense was trying to find out, and wasn't that what the court expert said, that you needed these tests that might show whether there was brain damage or not? Well, that's not exactly what Dr. Potts was saying. Dr. Potts did come in and testify that he saw evidence of some type of dysfunction, some type of organic brain damage, and that it would be helpful in understanding an etiology to have neurological testing. But it wouldn't have changed his opinion. And then the trial court heard his opinion anyway. But what this boils down to, and what I'd like to back up to, is your assessment under the AEDPA with respect to the trial court's determination and whether it was unreasonable. It was under these facts and this backdrop that the trial court made its decision. In addition, under Strickland, it was under this backdrop that Lee Novak, the trial counsel, had to look at the facts and determine what reasonable strategy he could come up with. And in this case, he came up with the best strategy possible. He highlighted Jones' lifelong substance abuse and the effect of that substance abuse at the time of the murder and on his behavior at the time of the murder. That's the strategy that Novak chose. And it wasn't until Why was that inconsistent with the strategy of exploring these neurological factors? Well, it's inconsistent with the facts of the case. When you look at the facts that Mr. Novak had, there wasn't – there didn't appear to be any evidence. And I'm setting aside Dr. Potts' testimony at this point. But there wasn't any evidence to suggest to him that Jones was suffering from some type of cognitive dysfunction. I think you What Potts said, if I'm recalling correctly, is that he saw evidence of some damage that would explain the outbursts. Right. And so, I mean, my question to you is this. I mean, I've been listening to your argument carefully on whether we can give counsel credit for a strategy. And I don't understand how a strategy of exploring substance abuse is inconsistent with the strategy of saying, and there were also some serious neurological problems. I mean, to me, neurological defense is stronger than substance abuse. People may say, well, there was some brain damage because of this. That may explain this. It might forgive this. But substance abuse, I think, people tend to – jurors tend to give less credence to on a statistical basis. But I don't understand why they're inconsistent. So tell me. Well, I don't – in some cases, they may not be inconsistent. It's inconsistent here, though. It's inconsistent here because if you look at the facts of the case, you have an individual at least putting aside Dr. Potts' testimony.  And counsel had a lot of evidence of lifelong substance abuse. Counsel also retained with court funding Dr. Sparks, who was a psychiatrist, a medical doctor, who testified about the fact that Jones had this substance abuse issue, that he had been doing drugs at the time of the murder, which the trial court found, and that his judgment was somehow affected by that. But there was no evidence from the facts of the case to determine that there was explosive anger or anything like that. And the trial court specifically found that in the special verdicts. So I think in this sense, it is – there is no evidence that would point counsel to – in the direction of – solely in the direction of – Not solely, but, I mean, in addition to. The question here is whether or not he was ineffective for not investigating and developing this other defense in mitigation. And if you're suggesting that it's a strategic decision, I don't see any evidence of that in the record. The question is, could it have been or was it a reasonable strategy? And that's what I'm – I find difficult to grasp. Well, I think, you know, it's always easy 20 years later to look back and say, yes, this could have been done. But you have to give justification for the reasons that counsel acted as he did under the ADP. Well, what are the reasons that Judge Thomas was saying? Was there a reason that he didn't do it? Was it that some way inconsistent with his defense to show what Dr. Potts, the court expert, said, that it would have been valuable to have this neurological expert, I think very strong evidence that we have, clear evidence that we have of traumatic brain injury, and other evidence I believe we may have organic neurologic dysfunctions here, gone on since he was about 13. And some of the testing I think would be valuable to have to pin down the diagnosis. I understand he keeps saying, putting aside Dr. Potts. Right. Dr. Potts is, it seems to me, the most important witness that he was left with. And it all points to the idea that he ought to have neurological testing. And then you develop your case. Well, two things, Judge Reinhart. First, the reason I put aside Dr. Potts' testimony is because Dr. Potts was a Rule 26.5 expert. Back in the early 90s, in a capital case, it was routine for counsel to ask the trial judge to appoint, under Rule 26.5, an expert who could evaluate a defendant's mental health at the time of the crime. That was routine. So that's why I put that aside. So I look at what Mr. Novak had factually, given the facts of the case, at that time. And there was no evidence, at least in this record from what we can tell, that there was any evidence that Jones suffered from any cognitive dysfunction or mental illness. He was looked at by Dr. Sparks prior to the guilt phase of the trial. Dr. Sparks, you would assume, a psychiatrist, if there was evidence that Jones had some type of cognitive dysfunction, would have told Mr. Novak that. But there's no evidence of that in the record. And I understand that Dr. Sparks looked at the addiction part of this, but she did talk with Jones and spent time with him, talked to him about his lifelong substance abuse, and did, in fact, talk to him about some of the facts of the crime. But he was hired as an addictionologist, right? I'm sorry? He was hired specifically as an addictionologist. Well, he was hired as an addictionologist, but she was also a psychiatrist, medical doctor, who was able to assess Jones in some fashion. But, yes, she only testified as to his substance abuse and what effects that would have on his behavior and judgment. But getting back to whether the trial court made an unreasonable determination in denying this testing, there was nothing in the record, at least for the trial court, to come to the conclusion that this testing was necessary. And it's ironic that the testing that was asked for in state court, which was simply neurological testing, which consisted of CAT scan, MRI, EEG, none of that was done in district court. So the testing that was actually asked for in state court has never been done. There was never any CAT scan or MRI or EEG or PET scan that was given in district court. So somehow this has blossomed from neurological testing to some other form of neurological examination. Well, the petitioner requested, and I'm just quoting from the district court opinion, a thorough and independent neuropsychological assessment. Was that in the postconviction? Yes. Yes, in postconviction he did ask for that. But at the trial, it was only for neurological testing. And that's true. But at the time that the postconviction court, which was the same judge that sentenced Jones, he had all the information necessary, and he didn't believe it would be necessary to have that type of testing done. So if this court were to come up with a rule that every time in postconviction a defendant simply asked for expert evaluations and a state court would have to do it, we would never have any finality in any of these cases. But that's, putting that aside, there was no evidence to suggest that this testing would have made a difference. And the trial court made that, the PCR court, made that determination in the PCR finding. I don't think that this court can find under the AEDPA the trial court's findings to be unreasonable with respect to these three ineffective assistance of counsel claims. But if it did, and you did a de novo review considering the evidence that was presented in district court, the evidence that was presented in district court still would not have changed the outcome of this case. And the district court made those findings based not only on the experts that Jones did present, but the rebuttal that the state would have presented. Because at the time that Jones went to trial, there was no rebuttal by the state. He was in an advantageous position having Dr. Potts testify unrebutted. The district court heard all of the evidence, not only Jones' neuropsych evidence and mental health evidence, but also the state's rebuttal. And it's interesting to note that with Dr. Pablo Stewart, the district court made findings based on Dr. Stewart's report, which suggested that the jury got it wrong in finding that Jones didn't kill Tisha Weaver. So at that point, the credibility determinations were made by the district court, and Dr. Pablo Stewart's report wasn't as credible as it might have been had he not gone into the facts of the case. But even with the new evidence, it wouldn't have changed the outcome of this case. And if the Court doesn't have any further questions, I'll end. Do you want to address the Martinez question? Well, Martinez — well, Martinez doesn't apply here.  Martinez's claim is that PCR counsel was somehow ineffective in failing to present this evidence. But PCR counsel did ask for this evidence. So it's kind of hard to imagine how he was ineffective when he tried to present it. But, again, it goes back to the trial court's reasoning that it really wasn't necessary in this case. And the trial court made those reasonable findings. So I don't think Martinez applies in this case. You know, the difficulty I think I have with that — with the analysis, it's both Martinez and your prior argument, is we're really saying if a state court says, all right, I'm not going to have a hearing, I'm not going to let you develop the evidence, and that's it, then it effectively becomes a self-fulfilling prophecy. The evidence, no matter how good it might have been, just simply isn't developed because in state court you prevent them from developing it. So isn't the real test is can, under those circumstances, a federal district court has the ability to look back in time and say, was that unreasonable in your prevention of the defense from developing or presenting it from having — I'm sorry, from developing the defense and presenting it at a hearing? Well, I agree it's a very difficult question because what you're looking at is the process, and you're not looking at the actual claims. And I think in a lot of sense, once you start doing that and you come down with a rule requiring state courts to do certain things. Well, not necessarily. I'm just saying that if, for example, in federal district court, and I know you disagree with the conclusion here, but let's say that as an assumption that the evidence was extraordinarily strong as presented in federal district court, and it was the evidence that could not be presented in state court because the PCR court declined to hold a hearing, saying, I remember everything. You don't need it. I've concluded. Under those circumstances, wouldn't you agree that an evidentiary hearing would be appropriate and could be — the evidence developed there could be considered under Penn-Holster? In certain circumstances, yes. And I think you would have to find a 2254D violation before you could go there. And then, of course, there's 2254E2, which would have to be satisfied. In this case, if you found a D1 violation or a D2 violation from the trial court or PCR court's determination, then you would go on to 2254E2. And I would say that he was diligent below in seeking this information. PCR court did ask for that. And then perhaps then you could look to the district court evidence that was presented. But even if you did that, our position is that that evidence really wouldn't have made a difference in the sentence. It wouldn't have changed the sentence in calculus here. Any further questions? Thank you. Thank you for your argument. I'd like to address, Judge Thomas, your last concern. The Supreme Court has held in Michael Williams' case that the ADPA does not equate prisoners who exercise diligence in pursuing claims with those that do not. So Petitioner, of course, agrees with your concern that Mr. Jones tried everything he could in postconviction to develop these claims and was stopped at every turn. I'd like to also address Mr. Zick's assertion that this was a difficult, if not impossible, case to defend. We have in ER 3302 and 3301 included declarations from two jurors that sat and listened to all the evidence in this case at the guilt phase, at the trial. And one juror found that or was of the opinion that this was not a death case. And another juror even found that he wouldn't have or she wouldn't have found Mr. Jones guilty of first-degree murder. So, yes, it was the facts of the crime were horrible, but it was not. It was a very tough case to defend on the guilt phase. There's no question about that. It is a tough case to defend on the guilt phase. It's not impossible. And Mr. Jones admitted to killing Mr. Weaver, but it was – but it would have not been – it's a defensible case when it comes to the penalty phase. We know that from the jurors that sat through the evidence. So why do you think juror affidavits about – Sorry? Why do you think the juror affidavits about sentencing pertain to this case when it was conducted under judge sentencing? Well, because, one, it is a view into what the people who actually sat through all the evidence were thinking. And, two, if this case were to go back for a resentencing, it would go back to a jury. Also, the state is constantly telling us, telling the court what Dr. Potts meant by the neuropsychological testing and neurological testing. Dr. Potts has already said what he meant. He just wanted to flush out brain damage, whether it was an MRI or a CAT scan or neuropsychological testing. And at the PCR, the post-conviction lawyer requested neuropsych testing. And as this Court may be aware, it is practically impossible to, you know, go out and do an MRI on a death penalty inmate. Also addressing Dr. Sparks, she was appointed to address Mr. Jones' addiction issues. She had limited funds. She was court-appointed. And in contrast, as this Court has noted, in its opinion, Dr. Stewart made an in-death analysis and evaluation of Mr. Jones' mental health issues and spent over 130 hours on that. Somebody, as Mr. Zick proposes, even a psychologist cannot sit there and just talk to somebody for a couple of hours and diagnose brain damage unless they had had a stroke or something like that. So we would refute that contention. And with that, unless the Court has any questions, we would request that the Court remand this case back to the district court with an order to issue the writ and send Mr. Jones back to Mojave County for resentencing. Further questions? Thank you for your argument. Thank you. Thank you both for your arguments today and for your extensive briefing. It's been a case that we've had in our court for a long time, and we will take it under submission. Thank you very much. We'll be in recess. All rise.
judges: Reinhardt, Hawkins, Thomas